Hyman Yaffe
vs.                    Eq. No. 9394
Metropolitan Life Ins. Co.

January 29, 1930.

BLODGETT, P. J.  Heard upon bill, answer and proof.

The bill is brought to reinstate a life insurance policy issued by respondent upon life of complainant, being a fifteen year endowment policy for $2,000 dated March 4, 1922.

Premiums of $41.48 each were payable quarterly. All premiums due on said policy were paid up to that due June 4, 1928.

A condition of said policy declares same to be lapsed unless such premium is paid within 31 days from time same became due. It had been the custom of the company to collect these premiums through their agents. July 9, 1928, an agent of the company called upon Abraham Yaffe, son of complainant, and who had acted for his father in paying the premiums. Abraham Yaffe delivered to the agent a check for $41.48 dated July 5, 1928, (Complainant's Exhibit 3). July 11, 1928, this check was cashed by respondent. The agent of the respondent thereupon gave a provisional receipt, dated July 9, 1928, for $41.48 (Complainant's Exhibit 5). This receipt contains the following condition: "If the official re-

ceipt is not delivered to you within 30 days, or if within 30 days your money has not been returned to you, notify the nearest branch office."

July 9, 1928, complainant filed a request with the company's agent for reinstatement of the policy. There appears on the face of this request the words, "Decline—7/19/28," supposedly meaning request declined July 19, 1928. October 4, 1928, complainant forwarded to the respondent a check for $41.48, being the premium due on the policy at that time. October 29, 1928, the respondent wrote to Philip C. Joslin, attorney for complainant, the following letter:

"Dear Sir:

Your Oct. 22 letter has been received. We return herewith the check for $41.48 which you sent us.

This policy lapsed for the non-payment of the June 4, 1928 policy premium, $41.48, which was afterward provisionally collected by our local representative, contingent upon favorable action being taken by the home office on the former insured's application for revival. We declined to revive this policy and have instructed our Narragansett District Office, Suite 329-333, 111 Westminster Street, Providence, Rhode Island, to refund the amount of the June 4, 1928 quarterly premium.

Yours truly,
R. D. Brown,
Division Manager."

(Complainant's Exhibit 9.)

The check returned was that for the premium due October 4, 1928.

The respondent on December 17, 1928, sent to complainant its check for $41.48 (Complainant's Exhibit 11). This check dated July 24, 1928, being the same amount as the premium due June 4, 1928, and cashed by the respondent July 11, 1928, has not been accepted or cashed by complainant. April 12, 1928, complainant filed an application with the respondent in-

surance company for a policy of insurance (Respondent's Exhibit D). This application was declined by the company as the medical examiner considered the applicant a poor risk by reason of arteriosclerosis. No medical examination was made after the application for reinstatement of July 9, 1928, and apparently the declination to reinstate the policy was based upon the report of the medical adviser in April 1928.

It is claimed on behalf of complainant that the respondent is estopped by reason of its delay in returning the premium paid July 9, 1928, since the premium paid was not returned until December 19, 1928.

It is further claimed by complainant that he received notice from respondent of a premium due October 4, 1928, and that in accordance with such notice he forwarded a check for $41.48 with said notice to the home office. This check was returned by the respondent. The notice as to a premium due September 4, claimed to have been received by complainant from respondent, was not in evidence, as Abraham Yaffe testifies same was returned to respondent at the time the check for $41.48 was sent to respondent.

Complainant further testified that one Gostanian, an agent and collector for the insurance company, called on complainant July 9, 1928, in the forenoon and received the check for the premium due June 4, and in the afternoon of the same day returned and gave complainant the provisional receipt from the company, and at the same time got the signature of complainant to the petition for a revival of the policy. This is urged by complainant as evidence tending to show that the insurance company recognized the policy as still in force. There is no question that there was about five months' delay in returning to complainant the premium paid by him July 9, 1928.

The case of *Brancato* vs. *National Reserve*, advance sheets of Vol. 35 (2nd) Federal Reports, at page 612, holds:

"Where insurance company rejects application for insurance and so informed applicant by letter duly received by them, delay of insurance company in refunding first premium for which it issued binding receipt did not create an insurance contract by estoppel."

The complainant in his answer to certain questions contained in the application for revival, in answer to the fifth question as to whether since the date of his policy he had applied to any insurance company for insurance and such application had been declined, said, "No."

In the relations between insurer and insured under a life policy the insurer should treat the contract in the most liberal manner possible as to the insured. Under the strict terms of the policy, in case of a lapse in the payment of premiums, the matter of reinstatement is left to the discretion of the insurer. The insured has no remedy except through a Court of Equity. In the present case the policy was issued March 4, 1922, and premiums were paid up to June 4, 1928. The insured was an elderly and from his appearance on the witness stand an ignorant man. All his dealings with the company were transacted by his son. The premiums were paid by the son. The application for revival was not made under oath and the Court is in some doubt as to just what the complainant knew as to the answers.

It would seem reasonable to the Court that the insurer might well have made a medical examination upon the filing of the revival application where a policy had been in existence six years. On the back of the application will be found a form for such medical report, and in the application itself is a provision that if the policy is re-vived the insurer, provided an untrue statement appears in the application, is under no liability for two years by reason of the attempted reinstatement.

The Court upon all the testimony and the record as appears from the various documents is compelled to determine that after the lapse in the policy the minds of the parties never met to form a new contract.

*Budnick* vs. *Metropolitan Life*, 177 Ill. A., p. 14;

*Same* vs. *Fidelity Mutual*, 142 N. C. 55;

*Conway* vs. *Minn. Mutual Life*, 62 Wash. 49.

Bill dismissed.

For complainant: Philip C. Joslin.

For respondent: Tillinghast & Lynch.